IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION


JAMES T. JEFFERSON )
)
v. ) NO. 3:06-0429
)
RICKY BELL, WARDEN )


TO:    Honorable Robert L. Echols, District Judge


## R E P O R T   A N D   R E C O M M E N D A T I O N

By order entered December 18, 2006 (Docket Entry No. 18), the above captioned petition

for a writ of habeas corpus filed under 28 U.S.C. § 2254 was referred to the Magistrate Judge for

further proceedings under Rule 8(b) of the Habeas Corpus Rules, 28 U.S.C. § 636(b)(1)(B), and

Rule 7 of the Local Rules for Magistrate Judge Proceedings.

Presently pending before the Court is Respondent's Motion to Dismiss (Docket Entry No.

15), to which Petitioner has filed a Response in Opposition (Docket Entry No. 17).  Also pending

before the Court is Petitioner's Motion for Summary Judgment (Docket Entry No. 21).  Set out

below are the Court's recommendations for disposition of the motions.


## I. BACKGROUND

Petitioner is an inmate of the Tennessee Department of Correction ("TDOC") incarcerated

at the Riverbend Maximum Security Institution ("RMSI").  He is serving a sentence of life

imprisonment for a conviction of first degree murder rendered by a jury in Davidson County,

Tennessee, in August 1993. Petitioner filed the instant pro se petition seeking relief from this conviction under 28 U.S.C. § 2254.

On the night of June 14, 1968, Mr. and Mrs. John Bolte were brutally attacked in their home in Nashville, Tennessee. Mr. Bolte was murdered by being struck in the back of the head with an axe. Mrs. Bolte was stabbed, struck in the head with an axe, and raped by the attacker. The couple's 18 month old daughter was also wounded with an axe. After leaving the couple for dead, the attacker took Mr. Bolte's watch, a collection of coins including Indian-head pennies, buffalo nickels, and liberty dimes, a billfold, and a camera. Mrs. Bolte and the child survived the attack.

A police artist later drew a sketch of the attacker based upon Mrs. Bolte's description of him. The sketch was published in a Nashville newspaper and led to Petitioner's arrest on July 1, 1968, after he was identified by a private citizen who recognized him. Subsequent to his arrest, Petitioner was positively identified in a police lineup by Mrs. Bolte as her attacker. Eleven buffalo nickels and two liberty dimes were found in his possession on the day of his arrest and he was identified by witnesses as having sold Mr. Bolte's watch, which was inscribed with the name "Bolte," to a co-worker. A palm print matching the known palm print of Petitioner was also taken from a rubber glove used by the attacker during the attack.[1]

Petitioner was indicted on July 23, 1968, on one count of first-degree murder, one count of rape, and two counts of assault with intent to kill. Petitioner's first trial resulted in a mistrial in

---

[1] More complete statements of the facts of the crime are set out in the opinions issued by the state courts which decided Petitioner's direct and collateral appeals. See State v. Jefferson, 938 S.W.2d 1, 8-9 (Tenn. Crim. App. 1996), and Jefferson v. State, 2005 WL 366891 (Tenn. Crim. App., Feb. 16, 2005).

2

1969. Two years later, he was tried on the murder charge and was convicted by a jury on March 5, 1971. He was sentenced to 99 years of imprisonment.

Petitioner's conviction and sentence were affirmed on appeal. See State v. Jefferson, 529 S.W.2d 674 (Tenn. 1975). However, the matter was remanded to the trial court for the limited purpose of determining whether African-Americans had been excluded from the grand and petit juries in Davidson County. Id. The trial court found no merit to Petitioner's claims. On May 20, 1977, the Tennessee Court of Criminal Appeals denied Petitioner's appeal of the trial court's decision. Jefferson v. State, 559 S.W.2d 649 (Tenn. Crim. App. 1977). Petitioner's application for certiorari to the Tennessee Supreme Court was denied on October 11, 1977.

Petitioner thereafter pursued federal habeas corpus relief by filing a petition for relief under 28 U.S.C. § 2254. His petition was granted by the District Court on March 30, 1985, and the Court gave the State 90 days to re-indict Petitioner or release him from custody. Jefferson v. Dutton, 607 F. Supp. 355 (M.D. Tenn. 1985). However, the Sixth Circuit Court of Appeals reversed the judgment of the District Court and remanded with instructions to dismiss the case without prejudice because Petitioner had not exhausted his state court remedies. Jefferson v. Dutton, 798 F.2d 469, 1986 WL 17211 (unpublished Table Decision)(6th Cir. June 10, 1986).

Petitioner thereafter unsuccessfully sought post-conviction relief in the state courts. Upon the conclusion of the state court proceedings, he filed his second petition for federal habeas corpus relief in May of 1989. Jefferson v. Morgan, No. 3:89-0382 (M.D. Tenn. 1991). The District Court again granted the writ, finding evidence of systematic exclusion of African-Americans from the grand jury that had indicted Petitioner. The State was ordered to re-indict Petitioner within 90 days or release him from custody. The Sixth Circuit Court of Appeals affirmed the judgment of the

3

District Court on April 29, 1992. Jefferson v. Morgan, 962 F.2d 1185 (6th Cir. 1992). The United States Supreme Court denied Respondent's petition for a writ of certiorari on October 5, 1992. Morgan v. Jefferson, 506 U.S. 905, 113 S.Ct. 297, 121 L.Ed.2d 221 (1992).

Petitioner was then re-indicted by the Davidson County Grand Jury on July 24, 1992, on four counts of felony murder, one count of premeditated first degree murder, and one count of rape. The rape count was dismissed[2] and Petitioner was retried in August 1993. He was found guilty of premeditated first degree murder and sentenced to 40 years imprisonment. Upon the motion of the State, the state trial court modified the sentence and imposed a sentence of life imprisonment.

Petitioner's conviction was affirmed on direct appeal. However, the matter was remanded for a re-sentencing hearing after the state appellate court determined that the jury's original sentence of 40 years imprisonment was incorrect as a matter of state law and could not be amended by the trial court after the jury was discharged. State v. Jefferson, 938 S.W.2d 1 (Tenn. Crim. App. 1996). Upon remand, Petitioner was sentenced to life imprisonment by a jury. His appeal was denied, State v. Jefferson, 1998 WL 908850 (Tenn. Crim. App., Dec. 31, 1998) (unpublished), and, after granting Petitioner's request for permission to appeal, the Tennessee Supreme Court held on August 25, 2000, that the sentencing error and remand did not entitle Petitioner to a new trial on the merits. State v. Jefferson, 31 S.W.3d 558 (Tenn. 2000). Petitioner did not seek a writ of certiorari from the United States Supreme Court.

Petitioner then filed a petition for post-conviction relief in the state court on May 9, 2001. See Attachment No. 3 to Docket Entry No. 16. The petition was denied. On February 16, 2005, the

---

[2] The rape charge was severed from the murder case in 1971, and was dismissed by the trial court in 1993, as violative of Petitioner's speedy trial rights since the case had been pending for almost 25 years.

4

Tennessee Court of Criminal Appeals affirmed the denial of the petition. Jefferson v. State, 2005 WL 366891 (Tenn. Crim. App. 2005) (unpublished). There is no indication in the record that a motion for permission to appeal to the Tennessee Supreme Court was received or filed.

On March 28, 2006, this Court received the instant Section 2254 petition and application to proceed in forma pauperis. The application to proceed in forma pauperis was denied. Petitioner thereafter paid his filing fee and the petition was filed on April 24, 2005. Petitioner then filed an amendment to his petition (Docket Entry No. 5). Petitioner presents five lengthy and all-encompassing grounds for relief:

1. the State withheld from his defense favorable and exculpatory information preventing him from using the information at trial in violation of Brady v. Maryland, 373 U.S. 83, 10 L.Ed.2d 215, 83 S.Ct. 1194 (1963);

2. prosecutorial misconduct;

3. denial of a fair trial and denial of due process;

4. sentencing error; and

5. denial of effective assistance of counsel at trial, on direct appeal, and during post-conviction relief proceedings.

See Petition (Docket Entry No. 1) and Amended Petition (Docket Entry No. 5).

On July 17, 2006, this Court ordered Petitioner to show cause why the petition should not be dismissed as untimely. See Docket Entry No. 7. Petitioner responded by asserting that he sought permission from the Tennessee Supreme Court to appeal the denial of post-conviction relief by filing a motion on April 12, 2005, but that he never received a response from the Tennessee Supreme Court, even after he mailed a letter on May 14, 2005, to the Clerk of the Tennessee Supreme Court inquiring about the status of his motion. See Docket Entry Nos. 8-9. He further asserted that the instant petition was actually given to prison officials to mail on March 16, 2006, and was received

5

by this Court on March 27, 2006, both of which occurred within the one year statute of limitations. See Docket Entry No. 8-1 at 2. Petitioner also asserted actual innocence of the crime of which he was convicted as a basis for the equitable tolling of any procedural shortcoming in his petition. Id.

By order entered September 28, 2006 (Docket Entry No. 10), this Court found that, although Petitioner had not established definitively that he filed his petition within the one year statute of limitations time period, his response on the issue established sufficient questions that sua sponte dismissal of his petition was not warranted and Respondent was ordered to respond to the petition. On November 22, 2006, Respondent filed the pending motion to dismiss the petition.

## II. RESPONDENT'S MOTION

Respondent asserts that the petition was filed more than one year beyond the applicable one year statute of limitations set out in 28 U.S.C. § 2244(d)(1) and is untimely. Respondent acknowledges that, pursuant to 28 U.S.C. § 2244(d)(2), the statute of limitations was tolled during the time that Petitioner's initial post conviction relief petition was pending. Respondent argues that the statute of limitations began to run again upon the conclusion of the post conviction proceedings and expired well before the filing of the instant petition for federal habeas corpus relief.

## III. PETITIONER'S RESPONSE

Petitioner contends that he submitted his petition for Section 2254 relief within a one year period subsequent to his post-conviction relief petition. He further contends that, even if the petition is viewed as untimely, he should be granted equitable tolling to excuse any untimeliness. Finally, Petitioner asserts that since 1968, he has continuously proclaimed his actual innocence of the crime

Case 3:06-cv-00429   Document 25   Filed 08/17/07   Page 6 of 26 PageID #: 338

for which he was convicted and the evidence which is at the heart of his <u>Brady</u> claim supports his assertion. He argues that it would be a miscarriage of justice for his habeas corpus claims to not be reviewed on their merits given his substantial evidence of actual innocence.

In addition to his response in opposition to Respondent's motion, Petitioner has submitted his own motion for summary judgment (Docket Entry No. 21). This motion is essentially a supplement to the petition and amended petition and sets forth further argument as to why Petitioner believes that he should be granted habeas corpus relief upon his claim of an illegal sentence.

## IV. LEGAL CONCLUSIONS

<u>A. Statute of Limitations</u>

28 U.S.C. § 2244(d)(1), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides:

> A 1-year period of limitations shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitations period shall run from the latest of -
>
> (A) the date on which the judgment became final by conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

7

In the instant action, Petitioner's judgment of conviction was rendered on August 25, 2000, when the Tennessee Supreme Court entered its opinion concluding his direct appeal. Although Petitioner did not seek a writ of certiorari with the United States Supreme Court, he is given the benefit of the 90 day period within which he could have filed such a petition, and his judgment thus became final for the purposes of Section 2244(d)(1)(A) on November 23, 2000, when the 90 day time period expired. See Clay v. United States, 537 U.S. 522, 528 n.3, 123 S.Ct. 1072, 155 L.Ed.2d 88 (2003); Bronaugh v. Ohio, 235 F.3d 280, 283 (6th Cir. 2000). However, because November 23, 2000, is Thanksgiving Day, the 90 day time period will be considered to have expired the next day on November 24, 2000. Because Petitioner has not pointed to a later triggering date under either subsection (B), (C) or (D), the Court will view the conclusion of the 90 day time period for seeking a writ of certiorari as the triggering date for the running of the one year statute of limitations, in accordance with subsection (A), and finds that the statute of limitations began to run on November 27, 2000, the following Monday.

Petitioner's response to the motion to dismiss fails to acknowledge that the statute of limitations began to run from November 27, 2000. Instead, Petitioner appears to believe that the statute of limitations began to run from the conclusion of his post-conviction relief proceedings. See Petitioner's Response (Docket Entry No. 17-1) at 2. Petitioner's position is erroneous.

On May 9, 2001, Petitioner filed his post-conviction relief petition in state court. At this point, 164 days of the one year statute of limitations period had already expired, leaving Petitioner with 201 days to file his federal habeas petition. However, Section 2244(d)(2) provides:

> [t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Accordingly, the statute of limitations was tolled when Petitioner filed his state post-conviction relief petition and remained tolled during the time the post-conviction relief proceeding was pending in the state courts.

The last decision from the state court in the post-conviction relief proceeding was rendered on February 16, 2005, when the Tennessee Court of Criminal Appeals entered its decision affirming the denial of post-conviction relief. Petitioner contends that he attempted to file a motion for permission to appeal. In support of this position, he has provided the Court with a cover letter for his motion to appeal that he contends was sent on April 12, 2005. See Docket Entry No. 8-3 at Exhibit No. 1. He has also provided a copy of a letter to the Clerk of the Tennessee Supreme Court, dated May 14, 2005, inquiring about the status of his motion for permission to appeal, a letter to which he contends he did not receive a response. Id. at Exhibit No. 2. Finally, he has provided a TDOC response to his request for the dates on which he sent both these letters.[3] Id. at Exhibit No. 3.

While it is unclear what may have happened to the motion for permission to appeal, there is simply no evidence before the Court showing that the Tennessee Supreme Court received the motion for permission to appeal and there is no record of any such motion having been filed. The Court simply must view the February 16, 2005, decision by the Tennessee Court of Criminal Appeals as the final decision rendered by the state court in the post-conviction relief proceeding.

Tolling under Section 2244(d)(2) continues only during the time period when "a properly filed application . . . is pending . . . ." See Carey v. Saffold, 536 U.S. 214, 220, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002). As such, the statute of limitations for filing a habeas corpus petition began to

---

[3] Interestingly, Petitioner did not request from prison officials the date on which he sent his motion for permission to appeal and the TDOC response does not show that he mailed anything to the Tennessee Supreme Court on or about April 12, 2005.

9

run again on April 19, 2005, the day after the 60 day period provided by Rule 11(b) of the Tennessee Rules of Appellate Procedure for the filing of a motion for permission to appeal to the Tennessee Supreme Court from the decision of the Tennessee Court of Criminal Appeals expired.[4] <u>See Shepherd v. Carlton</u>, 2007 WL 108903 (E.D. Tenn. 2007) (unpublished) (statute of limitations begins to run at conclusion of the petitioner's time for filing Rule 11 motion for permission to appeal even if no motion was filed).

Beginning on April 19, 2005, there were 201 days remaining in the one year statute of limitations within which Petitioner could timely file the instant petition. Thus, Petitioner had to file the instant petition no later than November 7, 2005.[5] The instant petition, however, was not received by the Court until March 28, 2006, 141 days too late. Even if the Court gives Petitioner the benefit of using the date of March 16, 2006, the day when he says he gave his petition to prison officials to mail, as the day when the petition is considered filed for the purposes of the statue of limitations, the petition was still filed well beyond the expiration of the statute of limitations. The petition is untimely on its face.

## B. Equitable Tolling

Petitioner raises the theory of equitable tolling in an effort to negate the effect of the statute of limitations. Equitable tolling can excuse the untimeliness of a petition for federal habeas corpus

---

[4] The 60 day time period actually expired on April 17, 2005. However, April 17 was a Sunday and, in accordance with Rule 21(a) of the Tennessee Rules of Appellate Procedure, the last day of the sixty period was the following day, Monday, April 18, 2005.

[5] The statute of limitations actually expired on November 5, 2005, but November 5, 2005 is a Saturday and, in accordance with Rule 6 of the Federal Rules of Civil Procedure, the last day of the time period was the following Monday, November 7, 2005.

relief which is filed beyond the one year statute of limitations. Allen v. Yukins, 366 F.3d 396, 401 (6th Cir. 2004); Dunlap v. United States, 250 F.3d 1001, 1004 (6th Cir. 2001). Petitioner bears the burden of demonstrating that he is entitled to equitable tolling, and equitable tolling should apply only if extraordinary circumstances exist. Allen, supra; Vroman, supra.

The following factors are relevant in deciding whether equitable tolling should apply:

1. Petitioner's lack of notice of the filing requirement;

2. Petitioner's lack of constructive knowledge of the filing requirement;

3. Petitioner's diligence in pursuing his rights;

4. Absence of prejudice to Respondent; and

5. Petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim.

Dunlap, 250 F.3d at 1008.

The Court finds that Petitioner has not satisfied his burden of showing that equitable tolling should apply. With respect to notice of the filing requirement, it is well-settled that "ignorance of the law alone is not sufficient to warrant equitable tolling." Rose v. Dole, 945 F.2d 1331, 1335 (6th Cir. 1991). Even if Petitioner lacked actual knowledge of the one year statute of limitations, the Sixth Circuit Court of Appeals has found that the AEDPA's clear provisions regarding the statute of limitations provide constructive knowledge of the one year filing requirement. Allen, 366 F.3d 403.

While it is clear that Petitioner has diligently used the legal system for the past 39 years to challenge his current imprisonment, he has not shown that the untimeliness of the instant habeas corpus petition was caused by a circumstance which was out of his control or that he was diligent in filing the instant petition. The type of circumstances which are outside the control of a petitioner

11

seeking equitable tolling are circumstances which are external to a petitioner's own defense. Examples are clerical errors by the Court or fraudulent representations or actions by the state which prevented a timely filing. See Jurado v. Burt, 337 F.3d 638, 642 (6th Cir. 2003); Knight v. Schofield, 292 F.3d 709 (11th Cir. 2002).

There has been no showing that Respondent should not be entitled to rely upon the statutory defense of the running of the statute of limitations because of equitable tolling.[6] The instant petition was untimely filed, and Petitioner has not met his burden of showing that he is entitled to equitable tolling.

C. Actual Innocence Exception

Even if equitable tolling does not apply, a credible showing by Petitioner that he is actually innocent of the challenged offense permits the Court to review claims which would otherwise be dismissed as untimely. Souter v. Jones, 395 F.3d 577, 598-599 (6th Cir. 2005).[7] The actual innocence doctrine applies in "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray v. Carrier, 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).

---

[6] The Court notes that the factor of absence of prejudice to Respondent "is to be considered only after a factor that might justify tolling is identified." Vroman v. Brigano, 346 F.3d 598, 605 (6th Cir. 2003).

[7] In addition to using the assertion of actual innocence as a gateway permitting a federal court to review claims that would otherwise be barred from review for procedural reasons, actual innocence may be asserted as a substantive claim for habeas relief where the petitioner's trial is error free. Herrera v. Collins, 506 U.S. 390, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). Such a scenario is not raised by Petitioner in the instant case.

The United States Supreme Court has held that if a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." Schlup v. Delo, 513 U.S. 298, 316, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." Id. at 327; Ross v. Berghuis, 417 F.3d 552, 556 (6th Cir. 2005); Souter, 395 F.3d at 596.

Under this doctrine, the habeas petitioner must present new evidence of his innocence because, "[w]ithout any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." Schlup, 513 U.S. at 316. Petitioner's burden is to set forth "new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." Id. at 324.

The Court has thoroughly reviewed the petition for relief and all filings made by Petitioner and Respondent[8] and finds that Petitioner fails to support his claim of actual innocence with sufficient evidence to satisfy the Schlup standard.

It is significant to note that Petitioner's claim of actual innocence is based entirely upon the evidence which he contends was withheld from his defense in violation of Brady v. Maryland, 373

---

[8] Respondent's entire response and argument on the significant issue of actual innocence raised by Petitioner consists of a single paragraph, see Docket Entry No. 16 at 3-4, which was of absolutely no assistance to the Court in determining the issues raised by Petitioner's actual innocence claim.

Case 3:06-cv-00429   Document 25   Filed 08/17/07   Page 13 of 26 PageID #: 345

U.S. 83, 10 L.Ed.2d 215, 83 S.Ct. 1194 (1963).  See Petitioner's Response (Docket Entry No. 17) at 3-8 and Petition (Docket Entry No. 2) at 1-2.  The evidence at issue in his Brady claim consists of 13 items from the police investigative file which was prepared during the initial investigation of the attack on the Bolte family in 1968-69, and which Petitioner contends he gained access to only after his 1993 trial was concluded.  See Exhibits 1 and 4-15 to Petition.[9]  Petitioner has not presented any evidence originating since 1968-69 which points to his actual innocence of the crime for which he is convicted.  For instance, he has not presented to the Court evidence such as a confession from someone who admits to the crime at issue, affidavits from new witnesses regarding the crime or Petitioner's alibi, recantations from witnesses who testified at trial or who provided incriminating information to the police, recent forensic or scientific evidence which either eliminates him as a suspect or points to another as the real perpetrator, or any other type of evidence which would support a claim of actual innocence and call into doubt his conviction by a jury.  While Petitioner's failure to provide any recent evidence or any evidence not contained in the investigative file supporting his claim of actual innocence is not fatal, the Court finds the absence of such evidence to be compelling.

Nonetheless, because the evidence at issue in the Brady claim can be viewed as new evidence supporting a claim of actual innocence since it was purportedly not available at Petitioner's 1993 trial, the Court must examine this evidence to determine whether that evidence supports a showing of actual innocence sufficient to permit the Court to review the merits of the untimely

---

[9] Exhibits Nos. 2 and 3 are the transcript of Petitioner's post-conviction relief proceeding and his appellate brief filed in that proceeding.  They were submitted to support the Brady claim but are clearly not items of evidence which were withheld from Petitioner.

14

habeas corpus petition.  See Abdus-Samad v. Bell, 420 F.3d 614, 624 (6th Cir. 2005); Souter, 395

F.3d at 595, n. 9.[10]


Supplemental Report of Officer R. Brown, dated June 15, 1968 (Exhibit No. 1)

This report memorializes a visit Officer Brown had with Mrs. Bolte at the hospital the day

after the attack.  The report states in pertinent part:

> She states that a MC [male colored] - slim, wearing a hearing aid and gray socks is
> the one who attacked her and rape-ing (sic) her.  A (sic) first she said it was a MW
> [male white] then changed her story on color of subect.  See doctor report.

The Court does not view this report as showing Petitioner's actual innocence of the crime.

First, the evidence itself does not show the actual innocence of Petitioner but merely shows some

uncertainty on the part of Mrs. Bolte in one of her initial descriptions of the race of her attacker.

However, Mrs. Bolte later described her attacker to a police sketch artist as an African-American,

made a positive identification of Petitioner as her attacker in a police line-up, and made a positive

identification of Petitioner in the courtroom at trial.  Further, Mrs. Bolte's differing descriptions of

the race of her attacker as recounted to Officer Brown in the hospital on the afternoon of June 15,

1968, could have been impacted  by the fact that it was less than 24 hours since she had been raped,

stabbed, struck with a hatchet, and left to die by her attacker.

---

[10] The Court notes that there is no actual evidence before the Court which shows that the items at issue in the Brady claim were not disclosed to Petitioner until sometime after his trial in 1993.  In his memorandum in support of his petition, Petitioner asserts that the items were withheld, and Respondent has not challenged the statement.

Accordingly, for the purposes of this Report and Recommendation, the Court shall assume, except for Petitioner's Exhibit Nos. 2, 3, and 12, addressed supra at n.9 and infra at 19-20, that the exhibits submitted by Petitioner as support for his Brady claim and his claim of actual innocence were in fact unavailable to him at any time prior to his trial in 1993.

Supplemental Report of Officer W.P. Jones, dated June 15, 1968 (Exhibit No. 4)

This report contains a summary of an interview Officer Jones had with two individuals. The first individual, who worked at a market "on Edmondson Pike just off Nolensville Road," stated that a "MC" came into the market at approximately 9:30 p.m. on the evening of the attack and acted "very mean and very arrogant." The second individual lived on Edmondson Pike about a mile and a half from the scene of the attack. He stated that he had seen a "MW" parking a green and white car "down below" the Bolte's residence at about 4:00 a.m. every morning for a month and had observed the car on the morning of the murder.

This report, while certainly relevant to the investigation of the crime, simply does not provide any evidence showing the actual innocence of Petitioner.

Supplemental Report of Officer R. Brown, dated June 15, 1968 (Exhibit No. 5)

This report states that Officer Brown interviewed a Mr. Jerry Bell, who stated that he saw a "MW" on Edmondson Pike about 7:30 a.m. on June 15, 1968, and the man was wearing a shirt with no sleeves "like a convict shirt."

Once again, this report, while certainly relevant to the investigation of the crime, simply does not provide any evidence showing the actual innocence of Petitioner.

Supplemental Report of Officer R. Brown and E. Castleman, dated June 20, 1968 (Exhibit No. 6)

This report listed the names of six men who had escaped from the local mental health hospital since June 1, 1968, but notes that none of them fit the description of the attacker. The

report also lists the name of an inmate who had been released from the state penitentiary, Joe Lewis Green, who could not be located.

This report simply memorialized investigative work conducted by the police officers and does not provide any evidence of actual innocence.

Written Summary or Investigative Notes (Exhibit No. 7)

This document is undated and unsigned and it is not clear who prepared the document. The document lists the name of a man who may have information and "knows of the separation and Mrs. Bolte running around," and lists an individual, Mrs. William Crowe, who saw a "MW" on Edmondson Pike the morning after the attack who was "real dirty." The document also notes the name of an individual who refused to give a statement and that "ID" was sent to the home of a woman who was "to show them where some prints are, left by a prowler on the same night of the Bolte incident."

This document simply appears to memorialize the investigative work conducted by police officers and does not provide any evidence of actual innocence.

Unsigned Letter to Lt. B.M. Hill, re: Murder on Edmondson Pike, dated June 27, 1968 (Exhibit No. 8)

This letter appears to be from two investigators or officers in the "intelligence section" identified only as "A-48" and "A-46." The letter notes that the officers had unsuccessfully investigated information about a "M/Negro . . . supposedly wearing an earring or hearing aid" in the area of Edmondson Pike. The letter also memorializes conversations the officers had with individuals in and around the neighborhood of the Bolte residence and their opinions that the crime

17

was a "family incident," that Mrs. Bolte was a "good time" woman, that it was rumored that she was pregnant by another man, and that she and her husband had argued about her circumstances.

Once again, this letter simply memorialized investigative work conducted by police officers and does not provide any evidence of actual innocence of Petitioner.

Supplemental Report of Lt. Ken Reasonover, dated October 13, 1969 (Exhibit No. 9)

This report notes that a Mr. Bill Gregory, "a representative of the Justice for Jefferson Committee," informed the officer on October 13, 1969, that he knew of a "MC" named Walter Lewis who wore a hearing aid on his left ear and had a speech defect and who Mr. Gregory believed was a suspect. The only reason Mr. Gregory could give for viewing this person as a suspect was because he was "infatuated by white women and had been riding a Haywood bus which goes out in the area of Edmondson Pike."

This report provides no evidence supporting showing the actual innocence of Petitioner.

Unsigned Letter to Lt. B.M. Hill, re: Bolte Murder Case, dated July 3, 1968 (Exhibit No. 10)

This appears to be another letter from two investigators or officers in the "intelligence section" identified only as "A-9" and "A-36." This letter memorializes a conversation the officers had with Mr. Robert Hansen, a man who employed Petitioner's grandmother to do housecleaning at his residence. The letter indicates that Petitioner's mother had been shot and killed by her boyfriend when Petitioner was about 16 years old, that his grandmother told Mr. Hansen that she believed Petitioner wore his hearing aid in his left ear, and that Petitioner did not seem to be violent or mentally upset on the several times that Mr. Hansen had talked with Petitioner.

18

This letter provides no evidence of the actual innocence of Petitioner or even any evidence relevant to the crime at issue.

Unsigned Letter, dated September 4, 1969 (Exhibit No. 11)

This appears to be a copy of a letter from the "Committee of Justice of Jefferson" which expresses the doubts of the "Committee" about Petitioner's ability to receive a fair trial and solicits donations to help pay for his defense. The letter is not addressed to any specific individual but generically to "Dear _____:" and is unsigned.

This letter provides no evidence of actual innocence or even any evidence relevant to the crime at issue.

Supplemental Report of Officer F. Wade, dated June 15, 1968 (Exhibit No. 12)

This three page report appears to be the initial investigative report conducted by Officer Wade, who was the first police officer called to the Bolte residence the morning after the crime. The report memorializes the condition of the crime scene as well as interviews conducted with five individuals that day. The report also notes that Richard Hartman was picked up and was being investigated.

Mrs. Barbara Johnson, a neighbor of the Boltes, was interviewed and stated that Mrs. Bolte had been having an affair with Richard Hartman, had left her husband for about five weeks, and that Mr. Bolte knew of the affair but the Boltes had gotten back together and "were getting along good." Mrs. Johnson also noted that Mr. Bolte had tape recordings of his wife and Richard Hartman and

that Mr. Hartman had continued to call the Bolte residence, prompting the Boltes to change their telephone number.

Mrs. Sandra Tankersly, another neighbor of the Boltes, stated that she saw a blue Ford car at the Bolte house two weeks prior to the crime, heard dogs barking about midnight on the night of the crime, and heard loud music coming from the area of the house sometime before dawn.

Mr. Dixon, another neighbor of the Boltes, stated that Mr. Bolte had discussed his marital troubles with him but not in detail.

Mr. Edward Bolte, the brother of Mr. Bolte, stated that he knew of the Boltes' marital difficulties, knew about Mr. Hartman, and knew about the tape recordings Mr. Bolte had made but did not know where the tapes were located. He also stated that he had been at the house at 9:30 p.m. and no one was at the house so he left a note. He stated that Mr. Bolte called him back at about 10:30 p.m. and talked "as if everything was alright."

Mrs. Katherine Stewart, another neighbor of the Boltes, stated that she passed the Bolte residence at approximately 3:40 a.m. the morning of the attack and saw a "MC," whom she described as "stocky-short-dark" with "a lot cinky (sic) hair" walking down the road "about the vicinity of the house on Edmondson Pike."

Once again, nothing in the report shows the actual innocence of Petitioner. Furthermore, this report is not new evidence as it was provided to Petitioner's defense counsel during the 1993 trial. See State v. Jefferson, 938 S.W.2d 1, 17-18 (Tenn. Ct. Crim. App. 1996).


Letter to Lt. B.M. Hill from C.M. Adams and L. Hayden, dated July 1, 1968 (Exhibit No. 13)

This four page letter is from two officers in the Intelligence Division and summarizes the

events surrounding Petitioner's arrest, his subsequent questioning, the search of his person, Mrs. Bolte's identification of him in a police lineup, and his initial criminal proceedings.

The letter merely recounts events in which Petitioner was directly involved, and there is nothing in the letter which shows the actual innocence of Petitioner.

Unsigned Letter to Lt. B.M. Hill, re: James Thomas Jefferson #33664, dated July 8, 1968 (Exhibit No. 14)

This four page letter is from two investigators or officers in "Internal Affairs #151 Intelligence" who are identified only as "A-36" and "A-9." The letter summarizes the investigation of Petitioner conducted by the officers. Included is a summary of their discussions with the proprietors of an establishment Petitioner was known to frequent and where Petitioner stated he played pinball, and summaries of discussions the officers had with other individuals regarding Petitioner. The letter also notes that a Mr. James King, a friend of Petitioner, was questioned by the officer informally and then formally at the police station at the request of Lt. Hill because of Mr. King's resemblance to the police sketch of Mrs. Bolte's attacker. The letter notes that Mr. King returned to his work after his questioning but does not memorialize any aspect of the content of his interview at the police station.

This letter is merely another summary of investigative steps taken by the police officers regarding the Bolte attack. Petitioner places much emphasis on the fact that the letter was written after his arrest and infers that this means that questions still existed in the mind of the police about his culpability for the crime. The Court cannot agree with Petitioner's stance on the letter. First, the letter itself does not include any evidence showing Petitioner's actual innocence of the crime. Further, the Court is unwilling to read anything into the fact that further investigation of the crime

21

continued even after Petitioner's arrest other than the police were attempting to investigate all aspects of the case.

Four Reports from the Federal Bureau of Investigation (Exhibit No. 15)

Petitioner has provided four separate reports from the FBI, dated July 12, 1968; July 16, 1968, July 26, 1968, and August 1, 1968. Each of the reports sets out the results and findings of the FBI's forensic analysis of evidence gathered in the crime investigation.

The July 12, 1968, report sets out the results of analysis of head and arm hairs from suspects Richard Hartman and Randell Tingle, head and arm hairs from Mrs. Bolte and her infant daughter, and 11 items of evidence from the crime scene - 2 rubber gloves samples, a blouse, panties, a dress, a half-slip, a knife blade and handle, an axe, a towel, a rug, and a brush. The results did not link the hair of either suspect to any of the 11 items of evidence nor were the blood specimens on some of the items suitable for "conclusive groupings."

The July 16, 1968, report sets out the results of latent fingerprint examination of the rubber gloves, knife blade and handle, and axe noted in the July 12, 1968, report. The report stated that no latent fingerprints of value appear or were developed on the analyzed items.

The July 26, 1968, report sets out the results of latent fingerprint analysis of the xerox copy of Petitioner's fingerprints and notes that no latent prints of value were developed in the case.

The August 1, 1968, report sets out the results of footprint analysis of a footprint found on a newspaper and a footprint found of the floor of the Bolte residence in comparison to the footprint of Petitioner and two samples of his shoes. The report states that, although examined footprints appeared to be the same overall size, the two footprints found at the scene of the crime could not be

22

definitely associated with Petitioner's footprints. The report also noted that no blood was associated with the two samples of Petitioner's shoes.

Of the 13 items of evidence presented by Petitioner, the FBI report of his fingerprint and footprint analysis are the only items of evidence which can be viewed as directly probative of the guilt or innocence of Petitioner. The fingerprint analysis is of little real value, however, because the fingerprint analysis of both Petitioner and the two other suspects whose fingerprints were analyzed did not result in any conclusions other than no latent fingerprints were developed from the items of evidence which were submitted for analysis. The fingerprint reports from the FBI neither prove nor disprove guilt or innocence.

The footprint analysis report is probative of Petitioner's innocence because the report notes that the two footprints found at the scene could not be definitely associated with the Petitioner's footprints. The Court finds, however, that this piece of evidence falls far short of supporting a claim of the actual innocence of Petitioner. The report itself does not exclude Petitioner as the possible maker of the footprints found at the crime scene. The report merely states that there was no definite match between the two footprints and Petitioner's footprints and further notes that the two footprints and Petitioner's footprints appear to be the same overall size. Given the exacting standard required to establish actual innocence under Schlup, the Court cannot say that it is more likely than not that no reasonable juror would have found Petitioner guilty beyond a reasonable doubt had this evidence been presented to the jury.

The Court also notes that it fully appears that the jury which found Petitioner guilty after his trial in 1971 trial did, in fact, consider the same or similar type of analysis which was contained in the FBI report. An agent of the Tennessee Bureau of Investigation testified at the 1971 trial

Case 3:06-cv-00429   Document 25   Filed 08/17/07   Page 23 of 26 PageID #: 355

regarding a bloody footprint found on the floor of the Bolte residence[11] and noted that, although the footprint and Petitioner's known footprint were of the same overall size, a positive identification could not be made from the footprint because the maker of the footprint was wearing a sock. See State v. Jefferson, 938 S.W.2d at 16.

The Court finds that no single item of evidence presented by Petitioner satisfies the showing required to prove an actual innocence exception to the statute of limitations. The Court further finds that the cumulative effect of the evidence presented by Petitioner likewise fails to rise to the level to conclude that it would be more likely than not that no reasonable juror would have found Petitioner guilty beyond a reasonable doubt had this evidence been presented to the jury. As has been repeatedly noted, aside from the footprint analysis report, none of this evidence either points to the innocence of Petitioner or points to another individual as the person who actually attacked the Bolte family. Indeed, the great majority of the evidence presented by Petitioner merely indicates that there were other individuals who were identified as having had some connection to the general vicinity of the area of the crime. It is significant, however, that none of this evidence in any way links any of these other individuals to the actual crime in any manner. Petitioner's assertion that one of the individuals noted in the newly discovered evidence was the actual attacker of the Bolte family is absolute speculation and is unsupported by any evidence presented to the Court.

Any cumulative effect of the evidence presented by Petitioner must further be viewed in light of the substantial evidence which was relied upon by the jury in finding his guilt. This evidence

_____

[11] It is not clear to the Court whether the footprint which was introduced in the 1971 trial was the same footprint that was submitted to the FBI for examination. It is further not clear whether the testimony of the agent from the Tennessee Bureau of Investigation referenced or was based upon the report from the FBI which is at issue.

24

included Mrs. Bolte's identification of him as the attacker, his possession of items taken from the Bolte residence, and his attempt to sell the murdered victim's distinctively identifiable watch to a co-worker. Nothing the Petitioner has presented discounts the substantial weight of such evidence regarding the guilt of Petitioner.

Upon consideration of the record before the Court and the nature of the evidence of actual innocence presented by Petitioner, it appears that an evidentiary hearing is not required in this matter and that the Court can dispose of the petition as the law and justice require. See Rule 8, Rules Governing Section 2254 Cases; Sawyer v. Hofbauer, 299 F.3d 605, 610 (6th Cir. 2002). Petitioner has presented an untimely petition for relief under Section 2254 and has not shown that either equitable tolling or the actual innocence exception applies to excuse his untimely petition. Accordingly, the Respondent's motion to dismiss should be granted and the petition should be denied.

## R E C O M M E N D A T I O N

Based on the foregoing reasons, the Court respectfully RECOMMENDS that:

1) Respondent's Motion to Dismiss (Docket Entry No. 15), be GRANTED;

2) Petitioner's Motion for Summary Judgment (Docket Entry No. 21) be DENIED; and

3) the petition for relief under 28 U.S.C. § 2254 be DENIED and this action be DISMISSED WITH PREJUDICE.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of receipt of this Report, or the proposed findings or recommendation to which objection is made. Failure to file objections within the specified time can be deemed a waiver

of the right to appeal the District Court's Order. See Thomas v. Arn, 474 U.S. 140 (1985); United

States v. Walters, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

JULIET GRIFFIN
United States Magistrate Judge