UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JAMES T. JEFFERSON, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 3:06-0429 |
| ) | JUDGE ECHOLS |
| RICKY BELL, WARDEN, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM

This is a habeas corpus action filed by a state prisoner. The Magistrate Judge has entered a Report and Recommendation (Docket Entry No. 25) in which she concludes (1) the petition for habeas corpus was not timely filed; (2) Petitioner is not entitled to equitable tolling of the limitations period for filing a habeas petition; and (3) Petitioner has not made a credible showing that he is actually innocent so as to allow review of his claims which would otherwise be deemed untimely. Accordingly, the Magistrate Judge recommends that Respondent's Motion to Dismiss (Docket Entry No. 15) be granted, Petitioner's Motion for Summary Judgment (Docket Entry No. 21) be denied, and this case be dismissed with prejudice.

## I. BACKGROUND

Thirty-five years after first being convicted of murdering John Bolte ("Bolte") with a hatchet while Bolte was asleep in his home, Petitioner filed a petition for writ of habeas corpus which again proclaimed his innocence. The petition is the latest in a series of challenges to his conviction which Petitioner has lodged in state and federal trial and appellate courts over the last three and one-half decades.

1

To place Petitioner's Objection in context, the Court will briefly summarize the facts. Detailed recitations of the facts can be found in the R & R (Docket Entry No. 25 at 1-6) and in Petitioner's state court cases cited by the Magistrate Judge in the R & R.

On June 13, 1968, the Bolte family was attacked in their home. Bolte was murdered by being struck in the back of the head with an axe. His wife Dora Bolte ("Dora") survived the attack, even though she was stabbed with a knife and struck in the head with an axe. Dora was also raped. The Boltes' infant daughter was struck with an axe during the attack.

A couple of weeks after the attack, Petitioner was arrested and charged with murder, rape and assault with intent to kill. Petitioner's first jury trial resulted in a mistrial. At his second jury trial, Petitioner was convicted on March 5, 1971, and subsequently sentenced to 99 years in prison.

Initially, Petitioner's conviction and sentence were affirmed on appeal. However, after many years of review of assorted claims including under-representation of African Americans in the grand and petit jury pools, Judge Nixon of this Court granted Petitioner a writ of habeas corpus, finding defendant established a *prima facie* case of race discrimination in the grand jury selection process. After the state unsuccessfully appealed that ruling and filed a petition for certiorari which was denied, Petitioner was re-tried in August 1993. He was found guilty of first-degree murder and sentenced to forty years imprisonment. However, at the state's request, the trial court modified the sentence and imposed a sentence of life imprisonment.

While Petitioner's most recent conviction was affirmed on appeal, the sentence was remanded for a re-sentencing hearing before a jury. The jury sentenced Petitioner to life imprisonment. After this sentence was affirmed on appeal, Petitioner requested permission to further appeal, which was denied by the Tennessee Supreme Court on August 25, 2000.

Petitioner began another round of post-conviction proceedings. His petition for post-conviction relief was eventually denied by the state court. On February 16, 2005, the Tennessee Court of Criminal Appeals affirmed the denial of the petition. There is no indication in the record that a motion for permission to appeal was filed in the Tennessee Supreme Court. On March 28, 2006, this Court received the instant Section 2254 petition which was docketed on April 24, 2006, after Petitioner's request to proceed in forma pauperis was denied.

Based upon this chronology, the Magistrate Judge, in a lengthy and thoughtful Memorandum, concluded that Petitioner's instant petition is untimely. The Magistrate Judge also concluded that there were no grounds for equitable tolling and an insufficient showing of actual innocence so as to allow the Court to consider the untimely petition.

## II. STANDARD OF REVIEW

Upon review of an R & R, the Court "shall make a *de novo* determination of the matter and may conduct a new hearing, take additional evidence, recall witnesses, recommit the matter to the Magistrate Judge for further proceedings and consideration, conduct conferences with counsel for the affected parties, and receive additional arguments, either oral or written, as the District Judge may desire." L.R.M.J. 9(b)(3). See, Fed.R.Civ.P. 72(b).

## III. DISCUSSION

Initially, the Magistrate Judge determined that Petitioner's instant petition was not filed within the one-year limitations period found in 28 U.S.C. § 2244(d)(1). The Magistrate Judge determined that the limitations period began to run on November 27, 2000, which was ninety-days after the Tennessee Supreme Court entered its opinion on August 25, 2000, concluding Petitioner's direct appeal. Petitioner did not seek a writ of certiorari from the United States Supreme Court. The

3

limitations period was tolled when Petitioner filed his petition for post-conviction relief in the state court, but began to run again on April 19, 2005, which was sixty days after the Tennessee Court of Criminal Appeals issued its ruling on Petitioner's post-conviction relief petition on February 16, 2005. There is no evidence in the record that Petitioner filed a motion for permission to appeal to the Tennessee Supreme Court. Under these calculations, Petitioner needed to file his instant petition no later than November 7, 2005, but the petition was not received by the Court until March 28, 2006, which was 141 days late.

In his Objection, Petitioner does not challenge the Magistrate Judge's calculation of time or her conclusion that the instant petition was untimely. This Court has independently reviewed the question of the timeliness of Petitioner's instant petition and finds the Magistrate Judge correctly calculated the time periods and properly applied the law to the facts in the case.

After concluding that the instant petition was untimely, the Magistrate Judge found no basis for equitably tolling the one-year limitations period. In his Objection, Petitioner asserts he is entitled to equitable tolling of the limitations period because, while he was "ignorant of legal requirements," he "acted diligently in pursuing his rights," notwithstanding that he was saddled with attorneys who made mistakes. (Docket Entry No. 28 at 1-2).

These conclusory assertions do not provide a basis for equitable tolling. As for Petitioner's contention that he is unschooled in the law, the Sixth Circuit "has repeatedly held 'that ignorance of the law alone is not sufficient to warrant equitable tolling.'" Allen v. Yukins, 366 F.3d 396, 403 (6th Cir. 2004) quoting, Rose v. Dole, 945 F.2d 1331, 1335 (6th Cir. 1991). Moreover, given the clear language in 28 U.S.C. § 2244(d)(1), Petitioner is presumed to have knowledge of the time limits for filing a habeas petition. Allen, 366 F.3d at 403.

4

Petitioner's contention that his lawyers in the past made mistakes in handling his case says nothing about why Petitioner did not file his instant petition within the one-year limitations period. In any event, "'a lawyer's mistake is not a valid basis for equitable tolling.'" Jurado v. Burt, 337 F.3d 638, 644 (6th Cir. 2003)(citation omitted): see also, Fahy v. Horn, 240 F.3d 239, 244 (3rd Cir. 2000)("attorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the 'extraordinary' circumstances required for equitable tolling").

Petitioner's primary objection relates to the Magistrate Judge's final conclusion that the record did not support a claim of "actual innocence," so as to support tolling and the opening of the gateway for federal review under Schlup v. Delo, 513 U.S. 298 (1995). In support of his actual innocence claim, Petitioner attached to his petition 13 items from the police file which was prepared during the initial investigation of the attack on the Bolte family in 1968. Because Petitioner asserted many of these items were withheld from the defense at the time of his trials in violation of Brady v. Maryland, 373 U.S. 83 (1963), the Magistrate Judge considered this "new" evidence for purposes of evaluating his actual innocence claim.

The standard for opening the gateway to review based on actual innocence is "demanding" and will be met only in "the extraordinary case." House v. Bell, 126 S.Ct. 2064, 2077 (2006). "[P]risoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" Id. at 2076-77 quoting, Schlup, 513 U.S. at 327. The items Petitioner relies upon are not sufficient to open the gateway to federal review.

The Magistrate Judge carefully detailed and reviewed each of the thirteen items, but concluded that they did not point to innocence and their cumulative effect did not make it more

5

likely than not that no reasonable juror would have found the Petitioner guilty had the items been presented to the jury. This Court has read each of the reports submitted by the Petitioner and agrees with the Magistrate Judge's conclusion on the actual innocence claim.

In his Objection, Petitioner specifically references a Federal Bureau of Investigation report relating to analysis of two footprints found at the scene of the crime. That report indicates the footprints found at the scene of the crime "could not be definitely associated with the footprints of the subject[.]" (Docket Entry No. 3, Ex. 15). However, the report also indicates the "footprints appear to be the same overall size." (Id.).

The fact that footprints from the scene of the crime could not "definitely" be associated with footprints from Petitioner's shoes does not necessarily mean that the footprints were not Petitioner's, or lead to the inescapable conclusion that Petitioner was not at the scene. Moreover, in analyzing a claim of actual innocence, "[t]he district court must make a probabilistic determination about what reasonable, properly instructed jurors would do," Schlup, 513 U.S. at 299, and consider "'all the evidence,' old and new, incriminating and exculpatory[.]" House, 126 S.Ct. at 2077.

This Court cannot conclude it to be more likely than not that no reasonable juror would have found Petitioner guilty beyond a reasonable doubt, even with the footprint evidence and the other items allegedly denied Petitioner in violation of Brady. Based upon Dora's description of the attacker, police arrested Petitioner. He was positively identified in a police lineup by Dora as the attacker and later so identified by Dora at trial. At the time of his arrest, Petitioner was found to have in his possession eleven buffalo head nickels and two Liberty dimes and the investigation revealed that Bolte's coin collection containing Indian head pennies, buffalo head nickels, and

Case 3:06-cv-00429   Document 31   Filed 09/20/07   Page 6 of 7 PageID #: 378

Liberty dimes was stolen during the attack. It was also determined that Petitioner sold a watch to a co-worker which a jeweler identified at trial as being the same watch he inscribed for Bolte. A palm print found inside a rubber glove used by the attacker matched the known palm print of the Petitioner.

Most of the "new" evidence presented by Petitioner does not suggest his actual innocence. The "new" evidence which supports his claim of innocence is wholly outweighed by the evidence pointing to his guilt.

Finally, Petitioner asserts that under the due process clause of the Fourteenth Amendment, his purported showing of actual innocence entitles him to a new trial or new sentencing hearing. (Docket Entry No. 28 at 3). However, Petitioner's "claim of innocence is . . . 'not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.'" Schlup at 315 quoting, Herrera v. Collins, 506 U.S. 390, 404 (1993). As already indicated, the Court concludes that Petitioner's evidence is insufficient to allow him to pass through that gateway.

## IV. **CONCLUSION**

On the basis of the foregoing, The Report & Recommendation (Docket Entry No. 25) will be approved and adopted, and Petitioner's Objection (Docket Entry No. 28) thereto will be overruled. Respondent's Motion to Dismiss (Docket Entry No. 15) will be granted and Petitioner's Motion for Summary Judgment (Docket Entry No. 21) will be denied. This case will be dismissed with prejudice.

An appropriate Order will be entered.

ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE